UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AUSTIN L. MASON,                          ) Case No. CV 08-1077-OP
                                          )
                    Plaintiff,            )
                                          )
              v.                          ) MEMORANDUM OPINION; ORDER
                                          )
MICHAEL J. ASTRUE,                        )
Commissioner of Social Security,          )
                                          )
                    Defendant.            )
                                          )

     The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

---

    [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action.  (See Dkt. Nos. 7, 9.)

    [2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1.      Whether the ALJ properly assessed Plaintiff's credibility;

2.      Whether the ALJ properly rejected Plaintiff's medication side effects;[3]

3.      Whether the ALJ's residual functional capacity ("RFC") finding is supported by substantial evidence;

4.      Whether the ALJ failed to consider Plaintiff's obesity in assessing his functional limitations;[4]

5.      Whether the ALJ properly determined that Plaintiff could perform his past relevant work; and

6.      Whether the ALJ properly developed the record concerning Plaintiff's mental and vision impairments.[5]

(JS at 2.)

/ / /

/ / /

---

[3]  Plaintiff contends that the ALJ improperly rejected his medication side effects within the claim regarding his credibility.  (JS at 11-17.)  The Court will address the ALJ's consideration of Plaintiff's medication side effects as a separate issue.

[4]  Plaintiff contends that the ALJ failed to consider his obesity, as required by Social Security Ruling ("SSR") 02-1p, within the claim regarding the ALJ's RFC assessment.  (JS at 18, 21.)  The Court will address the ALJ's consideration of Plaintiff's obesity as a separate issue.

[5]  For the purpose of judicial efficiency, the Court has rearranged the order of Plaintiff's claims.  (JS at 2.)

2

1

2

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.

## DISCUSSION

## A.   The ALJ Properly Evaluated Plaintiff's Credibility.

Plaintiff contends the ALJ failed to properly assess Plaintiff's credibility by failing to provide clear and convincing reasons for rejecting his subjective pain testimony. (JS at 11-12, 16-17.) Specifically, Plaintiff claims the ALJ improperly rejected Plaintiff's testimony regarding his deteriorating vision, disabling knee pain, and difficulty to stand. (Id.)

### 1.   Applicable Law.

An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily

3

1  reject a claimant's subjective testimony.  Bunnell v. Sullivan, 947 F.2d 341, 345-

2  47 (9th Cir. 1991).  An ALJ's assessment of pain severity and claimant credibility

3  is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir.

4  1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an

5  ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny

6  benefits, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903

7  F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.

8  1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit

9  finding that claimant was not credible is insufficient).

10      Under the "Cotton test," where the claimant has produced objective

11  medical evidence of an impairment which could reasonably be expected to

12  produce some degree of pain and/or other symptoms, and the record is devoid of

13  any affirmative evidence of malingering, the ALJ may reject the claimant's

14  testimony regarding the severity of the claimant's pain and/or other symptoms

15  only if the ALJ makes specific findings stating clear and convincing reasons for

16  doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also

17  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d

18  915, 918 (9th Cir. 1993); Bunnell, 947 F.2d at 343.

19      To determine whether a claimant's testimony regarding the severity of his

20  symptoms is credible, the ALJ may consider, *inter alia*, the following evidence:

21  (1) ordinary techniques of credibility evaluation, such as the claimant's reputation

22  for lying, prior inconsistent statements concerning the symptoms, and other

23  testimony by the claimant that appears less than candid; (2) unexplained or

24  inadequately explained failure to seek treatment or to follow a prescribed course

25  of treatment; (3) the claimant's daily activities; and (4) testimony from physicians

26  and third parties concerning the nature, severity, and effect of the claimant's

27  symptoms.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also

28

4

1   Smolen, 80 F.3d at 1284.

2       Social Security Ruling ("SSR") 96-7p further provides factors that may be

3   considered to determine a claimant's credibility such as:  1) the individual's daily

4   activities; 2) the location, duration, frequency, and intensity of the individual's

5   pain and other symptoms; 3) factors that precipitate and aggravate the symptoms;

6   4) the type, dosage, effectiveness, and side effects of any medication the

7   individual takes or has taken to alleviate pain or other symptoms; 5) treatment,

8   other than medication, the individual receives or has received for relief of pain or

9   other symptoms; 6) any measures other than treatment the individual uses or has

10  used to relieve pain or other symptoms (e.g., lying flat on his or her back,

11  standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any

12  other factors concerning the individual's functional limitations and restrictions

13  due to pain or other symptoms.  SSR 96-7p.

14      **2.    Analysis.**

15      Here, the ALJ discounted Plaintiff's subjective complaints based on his

16  daily activities and the lack of medical evidence or treatment in the record.

17  (Administrative Record ("AR") at 21.)  Specifically, the ALJ found that

18  Plaintiff's reported daily activities were inconsistent with his allegations of

19  disabling pain.  (Id.)  As the ALJ noted in the body of his decision, Plaintiff

20  described a "wide variety of daily activities" to the consultative examiner, Dr.

21  Rocely Ella-Tamayo.[6]  (AR at 21, 163-68.)  Dr. Ella-Tamayo considered Plaintiff

22  to be a "good historian."  (Id. at 163.)  Regarding Plaintiff's daily activities, Dr.

23  Ella-Tamayo stated, "He takes the bus to go out.  He does housework, cooking

24  and cleaning, goes to the store, does yard work and rests in between, listens to the

25

26      [6] On October 5, 2006, Dr. Ella-Tamayo performed a complete internal
27  medicine evaluation of Plaintiff at the request of the Social Security
    Administration.  (AR 163-68.)
28

5

1  radio and goes to the doctor."  (Id. at 164.)  Additionally, in an "Exertional Daily

2  Activities Questionnaire," Plaintiff confirmed that on an average day, he does

3  "shopping, cleaning, cooking, [and] yard work."  (Id. at 99.)  The Court finds that

4  the ALJ could properly rely on Plaintiff's daily activities, such as, *inter alia*,

5  completing household chores, yard work, cooking, cleaning, and shopping, to

6  support his adverse credibility determination.  See, e.g., Thomas, 278 F.3d at 958-

7  59 (ALJ may properly consider inconsistencies between claimant's testimony and

8  claimant's daily activities); Morgan v. Apfel, 169 F.3d 595, 599-600 (9th Cir.

9  1999) (ALJ may properly rely on contradictions between claimant's reported

10  limitations and claimant's daily activities); Tidwell v. Apfel, 161 F.3d 599, 602

11  (9th Cir. 1998) (daily activities inconsistent with total disability undermined

12  subjective testimony of disabling pain); Orteza v. Shalala, 50 F.3d 748, 750 (9th

13  Cir. 1995) (ALJ may properly rely on claimant's daily activities, including ability

14  to drive); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)(ALJ may properly

15  rely on daily activities inconsistent with claim of disabling pain); SSR 96-7p.

16      Notably, Plaintiff reported that he experienced difficulty with his vision

17  and high blood pressure while performing his daily activities.  (AR at 99.)

18  Additionally, at the hearing, Plaintiff testified that he became unable to work at

19  his previous job due to knee pain and his inability to stand and walk up stairs.

20  (Id. at 191, 207.)  Plaintiff further stated that he can only sit for twenty to thirty

21  minutes before he needs to straighten his legs out.  (Id. at 199-201).  As to his

22  vision, Plaintiff testified that he could only see blurry objects in his right eye.  (Id.

23  at 196-97.)  In his left eye, Plaintiff stated that his vision was worsening as he is

24  unable to read fine print or see far away.  (Id. at 196-98, 213-15.)  While Plaintiff

25  provided testimony describing his knee pain and vision problems, Plaintiff never

26  stated that his daily activities were more limited than what he described in his

27  daily activities questionnaire or conveyed to Dr. Ella-Tamayo.  Moreover, the

28

ALJ opined, "[Plaintiff's daily] activities involve significant amounts of physical and mental functioning.  Certainly, if the claimant suffered from disabling symptoms, he would not be able to perform all these activities."  (Id. at 21.)  Accordingly, the ALJ properly found that Plaintiff's daily activities were inconsistent with his allegations of disabling pain. (Id.)

Next, the ALJ based his adverse credibility determination on the findings of the medical sources[7] and the lack of medical treatment in the record.  (Id.)  To substantiate this finding, the ALJ relied in part on an ophthalmological examination performed by Dr. Dang at La Palma Ophthalmology on July 22, 2005.  (AR at 20, 129-32.)  Dr. Dang concluded that Plaintiff has Duane Retraction Syndrome in his right eye.  (Id. at 132.)  Dr. Dang indicated that Plaintiff would require glasses and suggested that  Plaintiff schedule a follow-up visit at the ophthalmology clinic.  (Id.)  Based upon Dr. Dang's findings, Plaintiff's treating physician, Dr. Joe Caceres, noted that Plaintiff did not require surgery for his vision problems but should visit the ophthalmological clinic for a follow-up visit.  (Id. at 145.)  Additionally, Dr. Ella-Tamayo found that Plaintiff had blindness of the right eye with limited extraocular muscle movement.  (Id. at 165, 167.)  Despite the above findings, there is no evidence in the medical record suggesting Plaintiff ever visited the ophthalmological clinic.  Moreover, Drs. Dang, Ceceres, and Ella-Tamayo did not provide any other visual limitations on Plaintiff's functional abilities.  Additionally, on September 16, 2005, Dr. Chiang-Chien completed a consultation request and found that Plaintiff had no constriction of his visual fields.  (Id. at 147-48.)  Dr. Chiang-Chien stated, "Based on what we have, the claimant has no significant functional limitation."  (Id. at

---

[7] Plaintiff does not allege that the ALJ improperly considered the opinion of his treating physician.  (See generally JS.)  Thus, the Court will not discuss this issue.

148.)  Finally, a visual acuity test completed on October 5, 2006, indicated that Plaintiff "can visually move about the office without any help."  (Id. at 174.) Accordingly, the ALJ properly discounted Plaintiff's credibility based upon the findings from physicians regarding the nature, severity and effect of Plaintiff's visual symptoms.  See Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284.

The ALJ also relied upon the lack of treatment to discount Plaintiff's credibility as to his allegations of disabling knee pain and leg pain.  (AR at 21.) The ALJ stated:

> Moreover, as indicated above, the documentary evidence fails to show that the claimant has been prescribed any narcotic pain medication to treat his allegations of disabling knee pain.  Certainly, if the claimant suffered from disabling knee pain, his doctors would have prescribed strong narcotic medication.

(Id.)  On August 31, 2006, Dr. Caceres concluded that Plaintiff has severe degenerative joint disease of the right knee.  (Id. at 162.)  Dr. Caceres also noted the following: (i) good alignment and mineralization of the right knee joint; (ii) no evidence of fracture, dislocation, or joint effusion; and (iii) joint space narrowing involving the medial compartment of the knee.  (Id.)  Despite these findings, Dr. Caceres did not recommend any surgeries or narcotic medication to treat Plaintiff's disabling knee pain.  (Id. at 128-46, 156-62.)  Additionally, Dr. Ella-Tamayo observed that:

> [Plaintiff] is obese and in no acute distress.  Gait is normal. . . .  Joints of the lower extremities normal except the right knee, which has minimal crepitation.  There is normal range of motion without pain elicited.

(Id. at 166-67.)  Dr. Ella-Tamayo also included in her evaluation a radiology

report by Dr. T. Divakaran, who stated that Plaintiff's "[m]ild tibiofemoral joint space [is] narrowing, which could be secondary to early osteoarthritis. (Id. at 169.) When Dr. Ella-Tamayo was questioned as to the radiology report, as the ALJ noted, she did not indicate that the report supported greater than medium limitations in standing and/or walking. (Id. at 20, 176.) Based on her observations and the medical evidence in the record, Dr. Ella-Tamayo opined that Plaintiff could perform medium exertional work. (Id. at 167.) Accordingly, the ALJ properly discounted Plaintiff's credibility based upon the findings from physicians and lack of treatment regarding the nature, severity and effect of Plaintiff's disabling knee and leg pain. See Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284.

Based upon the foregoing, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility regarding his deteriorating vision, disabling knee pain, and difficulty standing.[8]  Thus, there was no error.

/ / /

/ / /

**B.    The ALJ Properly Considered Plaintiff's Medication Side Effects.**

---

[8] As noted above, the ALJ relied upon the lack of treatment, such as prescribed pain medications, surgeries, and/or physical therapy, as a reason for discounting Plaintiff's credibility. (AR at 20-21.) Plaintiff argues that his inability to obtain or afford "greater treatment" is a legally insufficient reason to discount Plaintiff's credibility. (JS at 16.) While the Court is sympathetic to Plaintiff's financial inability to afford further treatment, there still exists a lack of evidence in the record suggesting that any medical source indicated further treatment, such as surgery, or prescribed any pain or narcotic medication for Plaintiff's allegations of disabling pain. Thus, the ALJ properly relied upon the lack of further and suggested treatment, *inter alia*, in discounting Plaintiff's credibility. See supra, Discussion, Part III.A.

1    In rejecting Plaintiff's credibility, Plaintiff contends that the ALJ

2    improperly considered the lack of medication side effects.  (JS at 11-12, 16-17.)

3    **1.    Applicable Law.**

4    Under Ninth Circuit law, the ALJ must "consider *all* factors that might

5    have a 'significant impact on an individual's ability to work.'"  Erickson v.

6    Shalala, 9 F.3d 813, 817 (9th Cir. 1993) (quoting Varney v. Sec'y of Health &

7    Human Servs., 846 F.2d 581, 585 (9th Cir.), relief modified, 859 F.2d 1396

8    (1988)).  Such factors "may include side effects of medications as well as

9    subjective evidence of pain."  Erickson, 9 F.3d at 818.  When the ALJ disregards

10   the claimant's testimony as to subjective limitations of side effects, he or she must

11   support that decision with specific findings similar to those required for excess

12   pain testimony, as long as the side effects are in fact associated with the

13   claimant's medications.  See Varney, 846 F.2d at 545; see also Muhammed v.

14   Apfel, No. C98-02952-CRB, 1999 WL 260974 (N.D. Cal. 1999).

15   **2.    Analysis.**

16   At the hearing, Plaintiff testified that he takes: (i) Tylenol and Aleve for

17   pain; (ii) baby Aspirin for heart disease; and (iii) Lotrel for high blood pressure.

18   (AR 202-04.)  Plaintiff stated that he suffers the following medication side

19   effects: (i) Lotrel and Tyelnol cause drowsiness; and (ii) Lotrel causes anger.  (Id.

20   at 205, 213.)  Additionally, in Plaintiff's "Pain Questionnaire," he reported that he

21   takes Lotrel, Aspirin and Tylenol once or twice a day, and the medications

22   sometimes makes him tired and sleepy.  (Id. at 93-94.)  Despite Plaintiff's

23   testimony, the record is devoid of any evidence documenting any side effects

24   from medications.  In his "Disability Report-Adult" and "Disability Report-

25   Appeal" forms, Plaintiff indicated that he takes the above noted medications but

26   suffers no side effects from the medications.  (Id. at 82, 89.)  Further, the Court is

27   unable to find that any alleged side effects of Plaintiff's medications were

28

10

medically documented. (Id. at 128-77.) Notably, Plaintiff does not dispute that medication side effects must be medically documented in order to be considered. See Miller v. Heckler, 770 F.2d 845, 849 (1985). Additionally, Plaintiff offers no objective evidence that his medications interfered with his ability to work. See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (Side effects not "severe enough to interfere with [plaintiff's] ability to work" are properly excluded from consideration). The only evidence regarding these alleged side effects consists of Plaintiff's own statements to the Administration. Accordingly, the ALJ concluded:

> With regard to his complaints of drowsiness due to medication, progress notes do not report any medication side effects. Obviously, the claimant would have reported such side effects to his doctor, if they impacted his functional ability. His failure to report such symptoms causes the Administrative Law Judge to doubt his complaints.

(AR at 21.) Based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject the side effects of Plaintiff's medications. Thus, there was no error.

**C.    The ALJ's Residual Functional Capacity Determination is Supported by Substantial Evidence.**

Plaintiff contends that the ALJ erred by failing to consider all the relevant evidence in determining Plaintiff's residual functional capacity ("RFC"). (JS at 17-21.) Specifically, Plaintiff argues that due to his knee problems, obesity,[9] and vision restrictions, he is unable to perform the range of medium work[10] prescribed

---

[9]  The Court will address whether the ALJ properly considered Plaintiff's obesity in the next section. See infra Discussion, Part III.D.

[10]  "Medium work involves lifting no more than 50 pounds at a time with
(continued...)

by the ALJ.  (Id. at 18).

### 1.   **Applicable Law.**

In determining a plaintiff's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.  Robbins v. Social Security, 466 F.3d 880, 883 (9th Cir. 2006) (citations omitted).  Careful consideration should be given to any evidence about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.  Id.

### 2.   **Analysis.**

Here, in determining Plaintiff's RFC, the ALJ, *inter alia*, considered Plaintiff's "history of knee pain as well as blindness of the right eye."  (AR at 20.) The ALJ found that Plaintiff has the RFC to perform a limited range of medium work restricted by his inability to perform work that requires: (i) lifting and carrying more than fifty pounds on an occasional basis and twenty-five pounds on a frequent basis; (ii) depth perception; and (iii) more than occasional fields of

---

[10](...continued)
frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).  SSR 83-10 instructs:

> A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

SSR 83-10.

1    vision.  (Id. at 22.)  Based upon the RFC finding, the ALJ concluded that Plaintiff

2    was able to perform his past relevant work as security guard.  (Id.)

3           Plaintiff first argues that he is not capable of performing medium exertional

4    work due to limitations caused by his knee pain.  (JS at 17-18, 20-21.)  However,

5    this contention is without merit.  The ALJ reported the various findings of

6    Plaintiff's treating physician Dr. Caceres, which Plaintiff argues supported a

7    finding of less than medium exertional work.  (Id.; AR at 20, 128-46, 156-62.)

8    However, the ALJ noted that Dr. Caceres "never placed any functional

9    restrictions on the claimant."  (AR at 20; 128-46, 156-62); see also Thomas, 278

10   F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a

11   treating physician, if that opinion is brief, conclusory, and inadequately supported

12   by clinical findings.").  Moreover, the ALJ stated:

13               Although the claimant was noted to have some restrictions in knee

14               motion, still, the medical records do not show that the claimant's

15               doctors recommended any type of surgical procedures or prescribed any

16               type of narcotic medication of treat the claimant's alleged pain.

17               Additionally, medical records do not document persistent abnormalities

18               of gait.

19   (AR at 20.)  This finding is supported by the medical record.  (Id. at 128-77.)

20   Further, the ALJ also accorded the findings of Dr. Ella-Tamayo with significant

21   weight "because it is supported by clinical findings and not contradicted by other

22   medical opinions of record."  (Id.)  While Dr. Ella-Tamayo did not initially

23   consider the X-ray findings regarding Plaintiff's knees in conducting her internal

24   medicine evaluation, the ALJ did include the doctor's subsequent responses to

25   Plaintiff's interrogatories regarding the X-rays in assessing Plaintiff's RFC.  (AR

26   at 20, 163-69, 175-77.)  The ALJ stated:

27               Apparently, imaging of [Plaintiff's] right and left knee revealed mild

28

13

tibiofemoral joint space narrowing, which could be secondary to early osteoarthritis. When questioned about these imaging impressions, Rocely Ella-Tamayo, the consultative examiner, reported that, at most, these findings would be consistent with mild and intermittent pain. Dr. Ella-Tamayo did not indicate that these findings would be consistent with extreme limitations in standing and/or walking. Rather, Dr. Ella-Tamayo opined that the claimant's medical conditions would not prevent him from performing medium exertional activities with limitations due to his right eye blindness.

(Id. at 20.) After considering the X-ray findings of Plaintiff's knees, Dr. Ella-Tamayo indicated that Plaintiff would *probably* be limited *occasionally* in his ability to stand or walk for prolonged periods time. (Id. at 176.) Plaintiff's contention that the Dr. Ella-Tamayo "also reported that the X-ray findings could support Mr. Mason's testimony concerning his knees" is inaccurate. (JS at 17; AR at 175-76.) In fact, there is no evidence that any physician opined that Plaintiff was more significantly limited due to his knee pain. (AR at 128-77.) Finally, Plaintiff's argument that he was unable to work at his previous job because it required too much standing does not support a lesser finding than medium exertional work because the ALJ discounted Plaintiff's credibility. (JS at 18; AR at 20-21, 201); see supra, Discussion, Part III.A. Based on the foregoing, the Court finds that the ALJ properly considered Plaintiff's alleged knee limitations in assessing his RFC. Thus, there was no error.

Plaintiff next argues that the ALJ determined that Plaintiff was "limited to no depth perception and occasional visual fields." (JS at 18, 21.) Plaintiff specifically argues that the ALJ improperly substituted his opinion for that of a medical professional because this visual limitation is unsupported by substantial evidence. (Id. at 18-19, 21.) Contrary to Plaintiff's contention and after

reviewing the medical evidence, the ALJ opined:

> The Administrative Law Judge notes that claimant also has been reported to have a history of . . . blindness of the right eye. According to the claimant, he has had poor right eye vision since birth. In 2005, an opthalmological examination revealed that the claimant had a blind right eye. However, his visual acuity in his left eye was reported to be 20/40. Additionally, his visual field on the left was intact. . . . Dr Ella-Tamayo opined that the claimant's medical conditions would not prevent him from performing medium exertional activities with limitations due to right eye blindness. The Administrative Law Judge accords significant weight to this opinion because it is supported by clinical findings and not contradicted by other medical opinions of record.

(Id. at 20.) As stated above, Dr. Ella-Tamayo's findings indicate that Plaintiff has blindness of the right eye and limited extraocular muscle movement. (Id. at 165, 172.) Despite these limitations, a visual acuity test suggested that while Plaintiff does not own any prescription glasses, he can visually move about the office without any help. (Id. at 174.) Plaintiff also provided testimony at the hearing that he is essentially blind in his right eye and has deteriorating vision with difficulty reading small print and seeing distances in his left eye. (Id. at 197, 213-17.) Based upon the above evidence (specifically, Plaintiff's inability to see distances and partial blindness), the ALJ determined that Plaintiff could perform medium exertional work limited, *inter alia*, by his inability do work that requires depth perception and more occasional fields of vision. (Id. at 19.) Based on the foregoing, the Court finds the ALJ properly considered Plaintiff's visual limitations in assessing his RFC. Thus, there was no error.

**D.**     **Reversal Is Not Warranted Based on the ALJ's Alleged Error with**

**Respect to His Failure to Consider Plaintiff's Obesity.**

Plaintiff also claims the ALJ should have taken into account Plaintiff's obesity in arriving at his decision, as required by SSR 02-1p. (JS at 18, 21.) He bases this contention on the October 5, 2006, opinion of Dr. Ella-Tamayo who concluded that Plaintiff is obese.[11] (AR at 165.)

      **1.**    **Applicable Law.**

Generally, where there is evidence of obesity, the ALJ must determine the effect of the Plaintiff's obesity upon his other impairments, his ability to work, and his general health.  See, e.g., Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003); see also SSR 02-01p (requiring an ALJ to consider the effects of obesity at several points in the ALJ's evaluation).  In Celaya, the Ninth Circuit held that it was error for an ALJ not to develop the record on an obesity condition when that condition was likely a partial basis for the claimant's disability, or could exacerbate her reported illnesses, and where the claimant had proceeded *pro se* and likely never knew that "she *could* assert obesity as a partial basis for her disability."  Celaya, 332 F.3d at 1183.

In Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005), the Ninth Circuit distinguished its holding in Celaya, holding that the ALJ had no duty to consider the represented plaintiff's obesity because there was no indication in the record that her obesity exacerbated her other impairments.  Burch, 400 F.3d at 682.  The court noted that there was no evidence before the ALJ, and none in the record, indicating that Burch's obesity limited her functioning.  There were no treatment notes or any diagnoses addressing her limitations due to obesity; the record was

---

[11] Dr. Ella-Tamayo indicated that Plaintiff is sixty-eight inches (or five feet and eight inches) and weighs 231 pounds. (AR at 165.)  Dr. Ella-Tamayo concluded that Plaintiff is obese but did not suggest that Plaintiff suffered any functional limitations due to his obesity. (Id. at 165-68.)

silent as to whether and how her obesity might have exacerbated her condition; Burch did not specify which listing she believed she would have met or equaled had her obesity been considered; and she did not present any testimony or other evidence at the hearing that her obesity impaired her ability to work. Id. at 682-83. Moreover, unlike the claimant in Celaya, Burch had been represented by counsel throughout the proceedings. Id. ("[m]ore significantly, Burch was represented by counsel.").

The facts in this case closely resemble those in Burch. Here, represented by counsel throughout the proceedings, Plaintiff presented no evidence that his obesity was disabling or that it exacerbated his partial blindness, knee pain, hypertension or heart disease. See Burch, 400 F.3d at 682. Even Dr. Ella-Tamayo did not offer such an opinion – she merely noted Plaintiff's obesity in her evaluation. (AR at 165-68.) Additionally, Dr. Ella-Tamayo did not indicate that Plaintiff suffered any functional limitations as a result of his obesity. (Id.) Moreover, no other physician provided an opinion suggesting that Plaintiff's obesity exacerbated his other impairments or caused him any functional limitations. (Id. at 128-77.) This is not enough for this Court to find error. See, e.g., Burch, 400 F.3d at 683 (holding that there was no reversible error in the ALJ's failure to consider the represented plaintiff's obesity where the only evidence in the record consisted of notes from doctors observing weight gain, indicating obesity, and recommending a medically supervised weight loss program). Nor does Plaintiff in this case set forth any evidence which would support the finding that his impairments met or equaled a Listing when obesity is included. Id. (plaintiff bears the burden of proving the impairment meets or equals the criteria of a listing; ALJ's failure to consider equivalence not error where claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing). As in Burch, there simply is no

17

1  evidence in this record of any functional limitations as a result of Plaintiff's

2  obesity that the ALJ should have, yet failed, to consider.

3       Based on the foregoing, the Court finds there was no error in the ALJ's

4  failure to address Plaintiff's obesity.

5  **E.**    **The ALJ Properly Determined that Plaintiff Could Perform His Past**

6         **Relevant Work.**

7       Plaintiff contends that the ALJ improperly determined that he can perform

8  his past relevant work as a security guard.  (JS at 21-25.)  Specifically, Plaintiff

9  argues that his inability to frequently stand or walk and his visual limitations

10  prevent him from performing his past relevant work.  (Id. at 21-22.)  Plaintiff

11  further argues that the ALJ erroneously classified his past relevant work as a

12  merchant patroller rather than as security guard.  (Id. at 24-25.)  Finally, Plaintiff

13  asserts that the ALJ's secondary use of the Medical Vocational Guidelines

14  ("Guidelines") was inapplicable and improper.  (Id. at 22-23.)  The Court

15  disagrees with Plaintiff's contentions.

16       As discussed above, the ALJ properly determined that Plaintiff retained the

17  RFC to perform a range of medium work with visual limitations.  (Id. at 19); see

18  supra, Discussion, Part III.C.  At the hearing, Plaintiff testified that he left his

19  previous employment as it required too much standing, walking and visual acuity.

20  (Id. at 207-09, 213-14.)  After reviewing the medical evidence and properly

21  discounting Plaintiff's testimony, the ALJ determined that Plaintiff could perform

22  his past relevant work as a security guard.  (AR at 21); see supra, Discussion Part

23  III.A.  Given the above limitations, the ALJ identified Plaintiff's past relevant

24  work as follows:

25         The claimant has past relevant work experience as security guard.  As

26         performed in the national economy, this job involves light, semiskilled

27         work activities.  This job does not require depth perception or more

28

1  than occasional field of vision activities.  (<u>Dictionary of Occupational</u>

2  <u>Titles</u>, #372.667-038).

3  (<u>Id.</u> at 19.)

4  As an initial matter, Plaintiff argues that the ALJ inaccurately classified his

5  past relevant work.  (JS at 21-22.)  Here, Plaintiff testified in his previous

6  employment, he performed crowd control as a security guard for events.  (AR at

7  187-88.)  Plaintiff also described his previous job duties as: "search people,

8  patrol, guarding equipment, basic crowd control, [and] reports."  (<u>Id.</u> at 80.)

9  Based upon Plaintiff's description of his previous employment, the ALJ classified

10  Plaintiff's past relevant work as a "Merchant Patroller" with alternate titles of

11  "Doorshaker; Guard; Security Guard."  (<u>Id.</u> at 19); <u>see also</u> U.S. Dep't of Labor,

12  <u>Dictionary of Occupational Titles</u> [hereinafter "DOT"], § 372-667-038 (4th ed.

13  Rev. 1991).  The duties of a "Merchant Patroller," in pertinent part, include:

14  Patrols  assigned  territory  to  protect  persons  or  property:  Tours

15  buildings and property of clients, examining doors, windows, and gates

16  to assure they are secured.  Inspects premises for such irregularities as

17  signs of intrusion and interruption of utility service.  Inspects burglar

18  alarm and fire extinguishers sprinkler systems to ascertain they are set

19  to  operate.   Stands  guard  during  counting  of  daily  cash  receipts.

20  Answers  alarms  and  investigates  disturbances. . . .   Apprehends

21  unauthorized  persons.   Writes  reports  of  irregularities.   May  call

22  headquarters  at  regular  intervals,  using  telephone  or  portable  radio

23  transmitter.  May be armed with pistol and be uniformed.  May check

24  workers' packages and vehicles entering and leaving premises.

25  <u>See</u> <u>DOT</u> at § 372.667-038.  However, Plaintiff argues that his previous

26  employment is more aptly characterized as a "Guard, Security" as follows:

27  Guards industrial  or  commercial  property against  fire,  theft,

28

19

vandalism, and illegal entry, performing combination of following duties: Patrols, periodically, buildings and grounds of industrial plant or commercial establishment, docks, logging camp area, or work site. Examines doors, windows, and gates to determine that they are secure. Warns violators of rule infractions . . . .   Watches for and reports irregularities . . . .  Sounds alarm or calls police or fire department by telephone in case of fire or presence of unauthorized persons.  Permits authorized persons to enter property.

See DOT at § 372.667-034.  While Plaintiff may have also been able to perform the duties as prescribed in the description of a "Guard, Security," Plaintiff offers no evidence, such as a job description or detailed testimony, that his past relevant work was not similar to that of a "Merchant Patroller."  (AR at 183-225.)  Thus, the ALJ properly determined, based upon Plaintiff's testimony and the evidence in the record, that Plaintiff could perform medium, unskilled work as defined by DOT at § 372.667-038.

Additionally, Plaintiff's contention that his past relevant work as identified by the ALJ requires occasional depth perception is inaccurate.  (JS at 21-22.)  The position of "Merchant Patroller" requires no depth perception and only occasional field of vision.  See DOT at §372.667-038.  Plaintiff relies on another similar occupation, not identified by the ALJ, which requires occasional depth perception and frequent field of vision.  (JS at 21-22); see also DOT at §372.667-034.  As the ALJ did not identify the occupation of "Guard, Security" as Plaintiff's past relevant work, Plaintiff's argument is without merit.

Finally, Plaintiff argues that the ALJ improperly employed the Guidelines, which are inapplicable due to Plaintiff's non-exertional limitations, i.e., visual limitations.  (JS at 22-23.)  Plaintiff further argues that the ALJ should have utilized vocational expert ("VE") testimony to support his finding that Plaintiff

20

1   was not disabled.  (Id.)  In a footnote, the ALJ provides:

2       Even assuming the claimant was limited to sedentary exertional

3       activities, still, his medical-vocational profile would match the one in

4       Rule 201.25, which directs a finding of "not disabled."

5   AR at 19, n.2.)  Here, the issues of whether the ALJ properly determined that the

6   Guidelines were applicable despite Plaintiff's nonexertional limitations or

7   whether the ALJ should have sought VE testimony are irrelevant.  As stated

8   above, the ALJ properly determined that Plaintiff could perform his past relevant

9   work as security guard.  As a result, the ALJ did not need to find other types of

10   substantial gainful work existing in the national economy or look to the

11   Guidelines to support his finding.  Thus, even if the ALJ erred in finding that the

12   Guidelines supported a finding "not disabled," any error here was harmless

13   because the ALJ's findings, including Plaintiff's ability to perform his past

14   relevant work, were based on substantial evidence in the record.  Curry v.

15   Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to

16   review of administrative decisions regarding disability.)

17       Based on the foregoing, the ALJ properly determined that Plaintiff can

18   perform his past relevant work.  Thus, there was no error.

19   **F.   The ALJ Fully and Fairly Developed the Record.**

20       Plaintiff's last contention is that the ALJ failed to properly develop the

21   record when he failed request consultative examinations for a mental disorder by

22   a psychiatrist and for vision impairments by an ophthalmologist.  (JS at 3-6, 9-

23   11.)  The Court disagrees.

24       **1.   Applicable Law.**

25       The ALJ has an independent duty to fully and fairly develop a record in

26   order to make a fair determination as to disability, even where, as here, the

27   claimant is represented by counsel.  Celaya, 332 F.3d at 1183; see also

28

Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996).  The duty is heightened when the claimant is unrepresented or is mentally ill and is, thus, unable to protect her own interests. Celaya, 332 F.3d at 1183; Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992); see also Burch, 400 F.3d at 682-83 (distinguishing Burch from Celaya at least in part, based on the fact that the plaintiff in Burch was represented by counsel). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  See Tonapetyan, 242 F.3d at 1150.

## 2.   **Analysis.**

Here, after the hearing, Plaintiff's counsel informed the ALJ that Plaintiff was suffered from a mental impairment.  (AR at 52.)  Plaintiff's counsel requested that Plaintiff be evaluated "to determine the extent of his depression and the level of his cognitive functioning."  (Id.)  The ALJ denied this request for a consultative examination, reasoning as follows:

> With regard to any mental functioning limitations, the documentary evidence fails to show that the claimant has ever sought treatment for any type of psychiatric or psychological illness.  The [ALJ] notes that claimant's attorney asserted that the claimant reports a mental impairment. . . . However, a review of the claimant's school records does not suggest a significant impairment in learning or cognition.  For the most part, the claimant's grade tend to be average or low-average. Significantly, on multiple occasions, the claimant received "A" or "B" grades in difficult courses such as English and History.  As such, these grades do not suggest any type of learning or cognitive impairment.  In fact, the claimant testified that he graduated a semester early.  Moreover, at his hearing, in response to questions about whether

22

he had problems with depression, the claimant responded, "No." Given
this evidence, it is clear that the claimant's functional ability is not
impacted by any mental impairment, and further investigation is not
warranted.

(AR at 21.) The record supports the ALJ's finding. There is no evidence in the
record that Plaintiff sought treatment for his alleged mental impairments. (Id. at
128-177.) Additionally, Plaintiff's school transcripts failed to support a learning
disability as the school records did not include any type of noted limitations by a
school psychologist or other qualified professional. (Id. at 122-27.) Rather, the
transcripts tended to show average to low-average grades, with occasional grades
of "A" and "B." (Id.) The school records also indicate that Plaintiff graduated a
semester early, which does not lend support to Plaintiff's theory of a cognitive or
other mental impairment. (Id.) While Plaintiff initially complained that he
suffered from brain damage, he later withdrew any allegation regarding brain
damage from his claim. (Id. at 96.) Moreover, at the hearing, Plaintiff did not
provide any testimony indicating that he suffered from a mental impairment. (Id.
at 183-225.) Although Plaintiff testified that he was in special education classes
due to a learning disability in high school, Plaintiff did not offer any evidence that
the alleged learning disability interfered with his functional limitations. (Id. at
217-20.) Finally, Plaintiff responded that he did not feel he had any problems
with depression or any mental impairment similar to depression.[12] (Id. at 222.)

---

[12] Plaintiff argues, *inter alia*, that his sporadic work history and earnings of
less than $8,088.00 a year, support an inability to maintain full time work. (JS at
3.) Plaintiff also argues that during a consultative examination, Dr. Ella-Tamayo
noted he smelled foul, which is a sign of mental disturbance. (Id.) However,
Plaintiff provides no support for either of these contentions. Additionally, Dr.
Ella-Tamayo's findings do not suggest that Plaintiff may be suffering from a
(continued...)

Plaintiff further argues that he presented a "colorable claim of a mental impairment," and that pursuant to 20 C.F.R. §§ 404.1519a and 416.919a, the ALJ was required to request a consultative examination. (JS at 4-6, 10.) Thus, Plaintiff asserts that the extent of the mental impairment and/or learning disorder is unknown. (Id. at 4.)

Title 20 C.F.R. §§ 404.1519a and 416.919a provide in pertinent part:

(a)(1) General. The decision to purchase a consultative examination for you will be made after we have given full consideration to whether the additional information needed . . . is readily available from the records of your medical sources. . . .

(b) Situations requiring a consultative examination. A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including, but not limited to the situations listed below, will normally require a consultative examination:

(1) The additional evidence needed is not contained in the records of your medical sources;

(2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source . . . ;

(4) A conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical course[.]

As a result, if the record was ambiguous or inadequate regarding Plaintiff's alleged mental impairments, then the ALJ would be required to order a

_____

[12](...continued)
mental impairment. (AR at 128-77.)

consultative examination.  See 20 C.F.R. §§ 404.1519a and 416.919a.  However, as stated above, the ALJ properly determined that Plaintiff failed to establish a claim in support of a mental impairment.  Additionally, Plaintiff fails to provide relevant reasons to show the ALJ's findings regarding the alleged mental impairment are ambiguous or inadequate.  See Mayes v. Massanari, 276 F.3d 453, 458 (9th Cir. 2001) (citing 42 U.S.C. § 423(d)(5) (Supp. 2001) and Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990)) (plaintiff has a duty to prove that she is disabled).  Accordingly, the ALJ was not required to develop the record further regarding Plaintiff's alleged mental impairment.[13]

Plaintiff next argues that the ALJ failed to properly develop the record concerning Plaintiff's vision impairment, and the ALJ should have requested a consultative examination to ascertain the extent and severity of the impairment. (JS at 5.)  Here, as noted above, the ALJ had adequate information to consider the opinions Drs. Caceres, Dang, Chiang-Chien, and Ella-Tamayo without further inquiry, and in fact, conducted a thorough evaluation of the doctors' opinions regarding Plaintiff's visual limitations.  (AR at 20); see supra, Discussion Part III.A, C.  Accordingly, the ALJ properly included a visual limitation in his RFC finding.  (AR at 19; see supra, Discussion Part III.C.)  There is no indication that, due to any ambiguity of the evidence, the ALJ was unable to consider the medical evidence regarding Plaintiff's visual impairments.  Moreover, Plaintiff fails to explain how the evidence regarding his visual limitations is ambiguous or inadequate.  See Mayes, 276 F.3d at 458.  Thus, the ALJ properly fully and fairly

---

[13]  Plaintiff alleges that his failure to understand or appreciate his mental impairment is not an appropriate reason for the ALJ to not obtain a consultative examination.  (JS at 4.)  Despite Plaintiff's contention, the ALJ relied upon the lack of medical evidence supporting a mental impairment, Plaintiff's testimony, and Plaintiff's school records to deny counsel's request for a consultative examination.  See supra, Discussion Part III.E.

1   developed the record with respect to Plaintiff' visual impairments.

2        Based on the foregoing, the Court finds that the ALJ fully and fairly

3   developed the record with respect to Plaintiff's alleged mental and visual

4   impairments.  Thus, there was no error.

5                                    **IV.**

6                                  **ORDER**

7        IT THEREFORE IS ORDERED that Judgment be entered affirming the

8   decision of the Commissioner, and dismissing this action with prejudice.

9

10  Dated: May 11, 2009

11                              HONORABLE OSWALD PARADA
                                United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28